279 So.2d 671 (1973)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Relator,
v.
LAMAR ADVERTISING COMPANY OF LOUISIANA, INC., et al., Defendants-Respondents.
No. 53148.
Supreme Court of Louisiana.
June 11, 1973.
*672 D. Ross Banister, Jesse S. Moore, Jr., Johnie E. Branch, Jr., Alva Jones, Baton Rouge, for plaintiff-relator.
Sanders, Miller, Downing & Kean, R. Gordon Kean, Jr., Baton Rouge, Mellon, Cavanaugh & Due, Karl W. Cavanaugh, Denham Springs, for defendants-respondents.
TATE, Justice.
These proceedings involve seven suits filed by the plaintiff highway department against the defendant advertising-sign owners. In accordance with the Department's prayer, the defendants were ordered to show cause on a day set ten days later why they should not be enjoined from maintaining the signs and should not be ordered to remove them. Not joined as defendants were the owners of the land on which the signs were erected.
At the hearing, the trial court maintained the exceptions pleading non-joinder *673 of the landowner as an indispensable party in each suit, La.C.Civ.P. Art. 927(3), and the exceptions pleading unauthorized use of summary process, La.C.Civ.P. Art. 926(3). The essential issues before us are whether these rulings are correct.
The court of appeal granted supervisory writs to review these rulings. After hearing, it affirmed the determination that the landowners were indispensable parties. It remanded the proceedings for their joinder by amendment, with instructions that, after such amendment, the proceedings be returned to the intermediate court for it to rule whether the Department properly utilized summary procedure. 271 So.2d 49 (La.App. 1st Cir. 1972).
We granted certiorari, La., 272 So.2d 373 (1973), to determine (a) whether the landowners are indispensable parties in suits such as the present and (b) whether the department is entitled to use summary process.

I.
The department filed these proceedings under Act 474 of 1966 (La.R.S. 48:461-461.15). This act provides for the control of outdoor advertising and junkyards in areas adjacent to the Interstate and primary highway systems of the State. The legislation was specifically authorized by Art. 6, Section 19.3, La.Constitution (as amended by Act 552 of 1966). The constitutional provision and the legislation declare it to be in the public interest, for reasons detailed more fully there, to regulate and restrict the erection and maintenance of outdoor advertising signs near such throughways. The constitutional amendment authorized the legislature to vest in the highway department "the full police power of the state" to accomplish the purposes set forth.
The legislation so authorized prohibited the erection of outdoor advertising signs within six hundred sixty feet of the highway right of way, La.R.S. 48:461.2, with exceptions not here pertinent, La.R.S. 48:461.2, 461.4. It also provided for a four-year delay period for nonconforming uses to exist, 461.5, and for compensation for removal of those lawfully erected or in existence on the effective date of the act, 461.6.
Pertinently to the present issue, however, it provides for the removal of unlawful advertising signs or devices erected in violation of the statute. 461.7.[1] The cited section requires an owner of such devices to remove them within thirty days after notice, and, if he fails to do so, the Department is authorized to remove them at his expense.
Under this provision, the present seven suits were brought against defendants who were alleged to be unlawfully maintaining advertising signs in violation of the statute. In each instance, it is alleged that the sign was erected after the effective date in 1966 of the statute and was unlawfully erected within six hundred sixty feet of the highway right of way, in violation of the said statute.

II

II. Are the landowners indispensable parties?

The Department contends that it is not necessary to join the landowners as defendants in these suits. The Department forcefully argues that, if indeed the signs *674 were unlawfully erected in violation of the statute, the landowners can have no interest in a suit by the Department against the sign-owners to remove them from their illegal placement. (If, on the other hand, the signs were lawfully placed, the Department points out, the present suits should be dismissed on their merits, and so any right of compensation to the landowners for a pre-existing or lawfully placed sign, 461.6, could not be prejudiced by these suits.)
The defendants, on the other hand, suggest that the landowners may have a real and actual interest: The signs may under the terms of the agreement belong to the landowners rather than the sign-erector defendants; the removal of the signs may result in a loss of rentals to the landowners.
The district court and the court of appeal concluded that the landowners are indispensable parties to this litigation. The court of appeal explained: "The landowners without question have property rights of value for the outdoor advertising sites, and the law does not permit these rights to be adjudged without making the landowners parties to the litigation."
The Code of Civil Procedure of 1960 adopted the concepts of "indispensable" and "necessary" parties to clarify what had proved to be a problem area for the courts.[2] The articles were essentially modeled after the Federal Rules of Civil Procedure, as those rules were then written.[3]
Article 641 of our 1960 code defines indispensable parties and requires their compulsory joinder. The article provides:
"Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
"No adjudication of an action can be made unless all indispensable parties are joined therein."
Necessary parties are defined and their joinder regulated by Article 642, which provides:
"Necessary parties to an action are those whose interests in the subject matter are separable and would not be directly affected by the judgment if they were not before the court, but whose joinder would be necessary for a complete adjudication of the controversy.
"An adjudication of an action may be made even if all necessary parties are not joined therein, but when timely objection is made to the nonjoinder of a necessary party the court shall require his joinder if he is subject to its jurisdiction."
The procedural consequences differ greatly according to the characterization of a party as "indispensable" or as "necessary". The failure to join an indispensable party may be raised at any time or may even be noticed by the trial or appellate court on its own motion. Articles 645, 927. On the other hand, the failure to join a merely necessary party, See Article 642 below, must be raised by a dilatory exception, *675 Article 645, and is waived if not timely raised in limine, Articles 926, 928.
Unfortunately, this new formulation of indispensable and necessary parties has not proven a satisfactory guide for our courts in the cases decided since the adoption of the new code. To the contrary, the rigid application of the terminology by the courts has led to decisions which are apparently more dependent upon the label the court has attached to a particular party than upon the underlying factual basis for labeling a party indispensable, necessary, or merely proper.[4]
Because of the great differences in the procedural rules which attach, under our Code of Civil Procedure, depending upon how a party is classified, great care must be exercised to insure a proper factual analysis of the party's interest in the case before a determination of the party's classification is made.[5]
For instance, since no adjudication may be made unless an indispensable party is joined, Article 641, an appellate court's notice on appeal of the absence of an indispensable party, Article 645, after the case is fully tried, results in a remand for joinder and re-trial with the indispensable party joined. These differences in the way the absent party affects the case, and the possible harsh result if the party is ruled indispensable, mandate that such a classification be applied to a party only after the facts clearly establish that no complete and equitable adjudication of the controversy can be made in his absence.
It is axiomatic that courts are without power to adjudicate the rights of a person who is not a party to the litigation or appropriately represented. Thus, if the courts below granted the relief the plaintiff Department seeks and required the removal of the defendant's signboards, such a judgment would not legally enjoin the landowner from leasing the same advertising site to another company to erect another billboard. Such a judgment would not, by itself, invalidate the landowner's lease with the defendant signowner, insofar as the landowner is concerned.
In the present cases, the exceptions were decided below on the pleadings and arguments of counsel. Not even the leases, which exceptors maintained would be abrogated by an adverse judgment, were made part of the record. Clearly, no factual analysis of the rights of the parties and absent persons could have been made. Thus, it is difficult to determine how the previous courts arrived at the conclusion that the property rights of the landowners would be detrimentally affected by a judgment in these proceedings, in the absence of any evidence to support such a conclusion.
The court of appeal in effect held that the courts of this state are powerless to adjudicate a controversy between parties properly before the court if such adjudication may affect contract rights one of the parties alleges he has with an absent third person. The result of such a rule, if upheld, is to permit skillful counsel, by filing conclusory pleadings and by artful argument, to convince a trial judge that property *676 rights of an absent third person may be affected and therefore have a plaintiff's suit delayed or dismissed, without any factual determination whether these contract rights will in fact be affected by the court's action, or to what extent they will be affected.
An exaggerated example from the present case will illustrate the problem such a rule would create. Suppose the judgments below were to be affirmed and the state required to conduct discovery or title examinations to learn the identity of all landowners upon whose property the signs complained of are located. Suppose further, that all such landowners were then located, properly served, and made parties defendant. There would be nothing to prevent the erectors of the advertising signs from then filing another peremptory exception alleging non-joinder of indispensable parties, i. e., the clients of the advertisers, whose products or services are advertised on these signboards. Certainly these parties may have contract rights which could be affected by a judgment of the court requiring the removal of these billboards. We do not believe that any such result is contemplated by the compulsory joinder articles of our Code of Civil Procedure.
Results such as this become possible because of the unfortunate wording of the Louisiana compulsory joinder statutes. These statutes, modeled after Federal Rule 19 (1938) as in effect in 1960 when our code was enacted, place the entire emphasis upon the rights of the absent party. No mention is made of the possible hardship to the parties before the court which could result from a holding that an absent party is indispensable, although the entire tenor of the 1960 Code is to prevent defeat of substantive rights through procedural technicalities.[6]
Even if the plaintiff has a far greater interest which will be irreparably damaged if no forum is provided to determine his rights, the absence of a third party characterized as "indispensable" leaves such a plaintiff with a right, but with no remedy if he is unable to acquire jurisdiction over the absentee.
As a result of the recognition of these problems, Federal Rule 19 was amended in 1966 to add the following section:
"Section BDetermination by court whenever joinder not feasible. If a person as described in subdivision (a)(1)(2) hereof cannot be made a party, the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: First, to what extent a judgment rendered when the parties absent might be prejudicial to him or those already parties; second, the extent to which, by protective provision in the judgment, the shaping of relief, or other measures, either prejudice can be lessened or voided; third, whether a judgment rendered with a person absent will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder."
The balancing of interests which is expressly permitted to the courts under Federal Rule 19 as now written thus gives needed flexibility and prevents hardship such as could result in this case if the judgments of the court below are affirmed by an overly technical non-functional interpretation of our own Code's equivalent provision.[7]
Our Code article, like Federal Rule 19 before amendment, has as its goal the prevention of injustice to absent parties resulting *677 from litigating cases in their absence which, while not legally binding upon them, nevertheless factually affect their rights. The defect in our article, if interpreted without regard to the overall purpose of the code, is that the converse may occur. The plaintiff may be left without any remedy, although he has a valid legal right and has before the court the person against whom that right should be exercised, merely because a third party also has rights which may be affected by the judgment.
We therefore conclude that parties should be deemed indispensable only when that result is absolutely necessary to protect substantial rights. A close factual analysis of the cases decided to date reveals that very few absent parties are absolutely indispensable to the litigation before the court. The court, by the shaping of its decree, may be able to avoid any possibility of prejudice to the rights of an absent party and still do justice to the parties before the court.
In the case at bar, the courts below did not engage in a close factual analysis to determine whether or not the absent landowners were in fact indispensable to the litigation. The leases upon which their property rights depend are not made part of the record, for instance. In fact, there is nothing in the record, other than the conclusory allegations of counsel, to indicate that any prejudice would be suffered by the landowner as a result of allowing the state to proceed.
We note that we are not hereby holding that the absent landowners are not indispensable parties. We merely hold that the courts below did not have evidence before them sufficient to find that the landowners are indispensable parties. If, on remand, the courts below find sufficient evidence to indicate that the landowners are indispensable, nothing herein is intended to preclude a judgment to that effect. If, on the other hand, the landowners are found to be merely necessary parties, the district court may still order their joinder.

III. Was use of summary procedure improper?

Because of its conclusion that the plaintiff has failed to join indispensable parties, the court of appeal reserved judgment on the defendant's dilatory exception of improper use of summary proceedings. The district court had held that the state was not entitled to use summary proceedings and had dismissed the suits.
By our Code of Civil Procedure, "Summary proceedings are those which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of the formalities required in ordinary proceedings." Article 2591. Summary proceedings are regulated by Articles 2591-96 of the Code.
Article 2592, as amended in 1964, provides: "Summary proceedings may be used for the trial or disposition of the following matters only: * * * [Listing 7 specific types of judicial actions, none of which are applicable];[8] (8) All other matters in *678 which the law permits summary proceedings to be used." (Italics ours.) Official Revision Comment (b) notes that the provision concerning matters "in which the law permits" summary proceedings "permits the court in each instance to give effect to the legislative intent where necessary."
The use of the word "only" makes it clear that the listing in Article 2592 is exclusive, and not merely illustrative. Thus, unless plaintiff's action can be brought within one of the categories set forth in Article 2592, the use of summary proceedings is not authorized and the dilatory exceptions were properly maintained.
The Department urges that this case falls within subsection (8) of Article 2592: "All other matters in which the law permits summary proceedings to be used." The position of the Department is that a fair reading of La.R.S. 48:461 et seq. leads to the conclusion that the legislature intended to permit the use of summary proceedings to enforce its provisions to remove illegal highway signs. Specifically, the state relies upon Section 461.7 which permits the Department to remove unlawful signs at the owner's expense after giving him thirty days' notice to remove it himself.
The Department concedes that the statute does not specifically authorize the use of summary proceedings. It nevertheless urges us to hold that the legislature must have intended to permit the use of summary proceedings to enforce a statute, the violation of which the statute declares to be unlawful.
In support of its position, the Department cites Pearce v. Gunter, 221 So.2d 599 (La.App. 3d Cir. 1969), certiorari denied, 254 La. 469, 223 So.2d 872. That case interpreted La.R.S. 3:2221, a health statute designed to control the spread of brucellosis, a contagious cattle disease. In that case, the court of appeal held: "Although the use of summary process is not expressly authorized by the statute, we feel the legislature in creating the statute necessarily implied the use of summary process in enforcing its compliance."
The facts of that case are clearly distinguishable from those here involved. There the rapid determination of the case was necessary to prevent the spreading of a contagious disease. The delays incident to proceeding by an ordinary action could well have resulted in rendering the statute totally ineffective, thus subverting the intent of the legislature.
No such immediacy has been shown in this case. To the contrary, the statute which the Department is seeking to enforce was passed by the legislature in 1966. Thus the Department has waited in excess of five years to bring these suits. No showing has been made which would indicate that the situations regulated by the statute are of such a nature as to imply the use of summary process as necessary to effectuate the statutory purpose.
The present cases involve serious factual as well as legal issues. They may require more than nominal preparation and discovery if a fair determination of the issues in controversy is to be made. If the use of summary proceedings is to be authorized in cases such as the present, the legislature, and not this court, should supply the authorization.
We therefore find that the district court was correct in maintaining the dilatory exception of improper use of summary proceedings.
However, the court was in error in dismissing the suits.
In the instant cases, a timely filed dilatory exception pleaded unauthorized use of summary proceeding. La.C.C.P. Art. 926(3). Article 933 provides that when grounds such as this are pleaded in the dilatory exception and "may be removed by amendment of the petition or other action by plaintiff, the judgment sustaining the exception shall order the plaintiff to remove *679 them within the delay allowed by the court; and the suit shall be dismissed only for noncompliance with this order."
Instead of dismissing the suits, the judgment should have permitted amendment converting them, if the plaintiff desired, to ordinary actions within a reasonable specified period, with a dismissal to result only from noncompliance with this order.

Decree
For the foregoing reasons, the judgments in the instant case are reversed, and they are remanded to the Twenty-First Judicial District Court for further proceedings not inconsistent with the views here expressed. The defendants-respondents are to to pay the costs of proceedings thus far in the appellate courts; all other costs to await final determination.
Reversed and remanded.
SUMMERS, J., concurs in the result.
NOTES
[1] La.R.S. 48:461.7 provides:

"Unlawful advertising shall be any sign, display or device which violates the provisions of this Part. The department shall give thirty days notice, by certified mail, to the owner of such device to remove same if it is a prohibited device or cause it to conform to regulations if it is an authorized device. If the owner of such device fails to act within thirty days, as required in the notice, the department shall remove the advertising device at the expense of the owner thereof."
[2] See the preliminary statement to Book 1, Title III, Chapter 1 of the Louisiana Code of Civil Procedure. For a fuller treatment, see McMahon, The Joinder of Parties in Louisiana, 19 La.L.Rev. 1 (1958).
[3] See Rule 19 (1938) and Shields v. Barrow, 17 How. 130, 15 L.Ed. 158 (1854), as well as Official Revision Comment (b), La.Civ.P. Art. 641.

It should be noted that Rule 19 of the F.R.C.P. has since been amended because of the difficulties created by a mechanical interpretation of the language of the rule. For a full discussion of the history of Rule 19 and the factors which led to its amendment, see 7 Wright and Miller, Federal Practice and Procedure, Secs. 1601-1604 (1972). See also Reed, Compulsory Joinder of Parties in Civil Actions, 55 Mich.L.Rev. 327 (1957).
[4] See, e. g., Consolidated Credit Corp. of Baton Rouge v. Forkner, 219 So.2d 213 (La.App. 1st Cir. 1969), criticized in Work of Appellate Courts, 1968-1969, 30 La.L.Rev. 289-91 (1969).
[5] See Reed, cited in Footnote 3 above at 55 Mich.L.Rev. 356: "Similarly, there is an assumption, possibly due to heavy reliance on the necessary indispensable terminology, that a court has discretion to proceed or not to proceed in one category (`necessary') and no discretion on the other (`indispensable'). Although true when applied to a party to which the court has attached one of these labels, the assumption is basically false in failing to recognize that there is initially a broad discretion in assigning a party to one category or other." See also: "Multiparty Litigation in the Federal Courts", 71 Harv.L.Rev. 874 (1958), reprinted in Selected Essays on Civil Procedure. (Harvard Law Review; 1965).
[6] Article 5051 provides: "The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves."
[7] See 7 Wright & Miller, Federal Practice and Procedure, Sections 1601-1604 (1972) for a complete treatment of the changes made in Rule 19 in 1966.
[8] The seven omitted matters are:

"* * *
"(1) An incidental question arising in the course of litigation;
"(2) An application for a new trial;
"(3) An issue which may be raised properly by an exception, contradictory motion, or rule to show cause;
"(4) An action against the surety on a judicial bond after judgment has been obtained against the principal, or against both principal and surety when a summary proceeding against the principal is permitted;
"(5) The homologation of a judicial partition, of a tableau of distribution or account filed by a legal representative, or of a report submitted by an auditor, accountant, or other expert appointed by the court; and an opposition to any of the foregoing, to the appointment of a legal representative, or to a petition for authority filed by a legal representative;
"(6) A habeas corpus, mandamus, or quo warranto proceeding;
"(7) The determination of the rank of mortgages and privileges on property sold judicially, and of the order of distribution of the proceeds thereof; and * * *"