BARRY, Judge,
Wade Verges, lessor, filed suit on a written lease alleging abandonment by the lessee and seeking $2,255 rent for August, 1984.[1] Life Insurance Company of Virginia, lessee, denied any rent due and reconvened seeking cancellation of the lease due to Verges’ failure to make necessary structural repairs. The trial court awarded $2,255 to Verges and voided the six year lease as of August 31, 1984.
Verges argues the reconventional demand exceeded the City Court’s monetary jurisdiction and the court had no authority to grant a “declaratory” judgment. He also claims his wife was an indispensable party to the reconventional demand, the language of the judgment is contradictory, and there is no basis to terminate the lease. Life of Virginia answered the appeal[2] alleging the lease should be terminated as of July 31, 1984.
This court may consider a trial court’s lack of jurisdiction even though the issue was not raised at the trial level. Dehaven v. Dehaven, 412 So.2d 537 (La.1982); Arnona v. Arnona, 477 So.2d 120 (La.App. 4th Cir.1985), writ denied 479 So.2d 367 (La.1985). See also La.C.C.P. Art. 3.
The amount of a reconventional demand is governed by La.C.C.P. Art. 4846:
When a parish or city court has subject matter jurisdiction over the principal demand, it may exercise subject matter jurisdiction over any incidental action properly instituted in connection with the principal demand, regardless of the amount in dispute in the incidental demand.
Thus, the value of the lease is immaterial and City Court had jurisdiction. See Maraist, A New Look in Courts of Limited Jurisdiction, 27 La.Bar J.139 (1979).
The jurisdiction limitations relating to the nature of the proceeding make no mention of declaratory judgments. La.C.C.P. Arts. 4847 and 4848. Verges’ argument that because City Court did not have jurisdiction over the reconventional demand it did not have jurisdiction to “declare” the lease terminated has no merit.
*618 Verges argues his wife was an indispensable party to the reconventional demand. Although this issue was not raised at the trial level, the failure to join an indispensable party may be raised at any time or noticed by the trial or appellate court on its own motion. La.C.C.P. Art. 645; State through Department of Highways v. Lamar Advertising Co. of Louisiana, Inc., 279 So.2d 671 (La.1973). He concedes she consented to the lease and is only a necessary party in his main demand.
Indispensable parties are those whose interests in the subject matter are so interrelated and would be so directly affected by the judgment, that a complete and equitable adjudication cannot be made without them. La.C.C.P. Art. 641.
Either the husband or wife is a proper party defendant in a suit to enforce a community obligation. La.C.C.P. Art. 735; Chrysler Credit Corporation v. Nata, 469 So.2d 11 (La.App. 4th Cir. 1985), writ denied 474 So.2d 1309 (La.1985). When one spouse is sued to enforce a community obligation the other spouse is a necessary party. La.C.C.P. Art. 735. An adjudication of an action may be made even if all necessary parties are not joined therein. La.C.C.P. Art. 642. Mrs. Verges was not an indispensable party to the original or reconventional demand.
Verges claims because the judgment states the facts and law are in his favor the lease should not have been terminated. The language he relies on applies to the first adjudication which pertains to the rent. The second adjudication as to the reconventional demand is separate and not contradictory.
Life of Virginia sent a letter to Verges dated March 8, 1984 terminating the lease effective April 30, 1984 due to structural defects. The letter detailed several written complaints (since 1982) about water leakage and resultant damages. Life of Virginia continued to occupy the premises and paid rent through July, 1984 when it vacated the premises.
Verges argues the lease form provided by Life of Virginia must be interpreted consistent with the common intent of the parties. La.C.C. Art. 2045. As to repairs the lease provides:
FOURTH. Lessor agrees to make all necessary interior structural/exterior and structural repairs to the demised premises and to the Property; to repair all damage caused by fire or other casualty, ... unless such . repairs necessitated by reason of the negligence of the Lessee, or the acts or negligence of Lessee, its agents, employees, officers or invitees, in which case Lessee shall be responsible to make such repairs. Lessee shall, upon occupancy of the premises, promptly advise Lessor of all defects and deficiencies found thereon and Lessor shall correct same as required hereby within thirty (30) days after such notice. Lessee is responsible for all other repairs. If Lessor defaults in making necessary repairs, Lessee may at its option* either terminate this Lease immediately upon written notice to Lessor or Lessee may have the necessary repairs done for the account of Lessee, and Lessor shall pay Lessee, upon demand, the expense thereof. If Lessor fails so to reimburse Lessee for the expense of such repairs, Lessee may deduct from any rentals payable hereunder as they accrue, such amounts as may be necessary to fully reimburse Lessee. *(after thirty (30) days prior written notice to Lessor and Lessor’s failure to cure any such default within said thirty (30) day period).
Verges testified that Life of Virginia attempted to break the lease by contriving problems. He claimed John Lyle, agency manager, personally told him of Life of Virginia’s intent to terminate the lease early. Verges claimed office employees removed 4 " screws in order to open windows which then leaked. He responded to all complaints and the original ceiling leaks in 1982 had been corrected. He claimed a door had been abused by office workers and no one complained about water damaged drapes or carpet or that repairs were unsatisfactory. After he received the *619 March 8, 1984 letter he installed canopies over the windows and doors.
Raymond Legeaux, Verges’ superintendent, and Ronald Natal, his construction chief, corroborated Verges’ testimony. Le-geaux admitted the windows leaked but attributed the condition to removal of screws. He admitted there were ceiling leaks and resultant water damage, but stated the problems were handled promptly. Natal noted the existence of a complaint book, but the pages were systematically torn out so that no record remained. He testified he corrected ceiling leaks.
The trial court heard a different story from three employees or former employees of Life of Virginia. Robert Roth, sales manager, Ethelyn Boudreaux, senior office manager, and John Lyle, agency manager, all testified to ceiling and window leaks with every medium rain. They noted water stains on the carpet and draperies which caused an odor and water damage to a computer and typewriter. They testified to continuous door problems which caused policyholders to have difficulty opening the front door. Sometimes the back door could not be locked and often jammed so that agents could not enter after hours.
The three admitted Verges sent workmen out (never promptly) after complaints, but the problems were never corrected. Boudreaux claimed the canopies did not resolve the problem. Lyle noted two futile years trying to have the back door repaired and said dampness and drafts in the winter compelled workers to use blankets. He denied conversations with Verges concerning tactics to break the lease.
Verges testified the alleged problems arose after Life of Virginia decided to consolidate its various offices. Documentation indicates the contrary. Life of Virginia sent a October 19, 1982 letter seeking to negotiate a termination of the lease. Although Lyle was listed for a carbon copy, he testified he did not receive it and claimed no knowledge of the company’s desired move until 1984. Pre-dating that letter was one to Verges dated February 23, 1982 from the home office which complained of roof leaks through air conditioning vents in three locations and through window frames in the inner office. The letter noted damage to typewriters, Key-pact computone, equipment items, drapes and carpet. After first acknowledging receipt of the letter, Verges later testified he did not receive it. A December 22, 1983 letter called attention to leakage around the window frames and resultant damage.
Verges argues that the problems were not structural in nature and were not his responsibility. However, whenever the lessee complained of roof or water leakage, he responded. Since his responsibility under paragraph four is basically limited to structural repairs, he apparently concluded the problem(s) were structural.
The trial court found there were structural problems and made a fact call. Where there is conflict in testimony reasonable evaluations of credibility are not to be disturbed. Ward-Steinman v. Karst, 465 So.2d 227 (La.App. 3rd Cir.1985). We find no manifest error in the decision to terminate the lease.
Life of Virginia argues since it gave adequate advance notice in writing of the structural defects and vacated the premises in July, the lease should have been can-celled as of July 31, 1984. We disagree.
The lease requires 30 days written notice based on cause. Life of Virginia’s notice was given in March but it did not vacate until July. It was reasonable, under these facts, to award the August rent to the lessor.
The judgment is affirmed.
AFFIRMED.

. The lease does not have an acceleration clause.

. Although Life of Virginia captioned its answer Motion and Order for Appeal, we consider it a timely answer to the appeal.