873 So.2d 1 (2003)
Lydia A. BONNETTE, et al.
v.
TUNICA-BILOXI INDIANS d/b/a Paragon Casino Resort, et al.
No. 02-919.
Court of Appeal of Louisiana, Third Circuit.
May 28, 2003.
Order on Grant of Rehearing March 24, 2004.
*2 Jerold Edward Knoll, Jerold Edward Knoll, Jr., The Knoll Law Firm, Marksville, *3 LA, William B. Baggett, Wells Talbot Watson, Bagget, McCall, Burgess & Watson, Lake Charles, LA, for Plaintiff/Appellants, Lydia A. Bonnette, et al.
Shelly D. Dick, Forrester, Jordan & Dick, Baton Rouge, LA, R. Joshua Koch, Jr., Spyridon, Koch & Palermo, Metairie, LA, for Defendant/Appellee, Tunica-Biloxi Indians d/b/a Paragon Casino Resort.
James H. Gibson, Allen & Gooch, Lafayette, LA, for Defendant/Appellee, New Horizon Kids Quest, Inc.
George D. Ernest, III, Hurlburt, Privat & Monrose, Lafayette, LA, for Defendant/Appellee, Berg, Inc.
Patrick J. Hanna, Kay Karré Gautreaux, Rabalais, Hanna & Hebert, Lafayette, LA, for Defendant/Appellee, Tunica Biloxi Construction Company.
Bonita K. Preuett-Armour, Armour Law Firm, Alexandria, LA, for Defendant/Appellee, Glen Moreau d/b/a G.W. Moreau Metal Buildings, Inc.
Steven C. Judice, Keogh, Cox & Wilson, Baton Rouge, LA, for Defendant/Appellee, Larry Stockwell Heating & Air Conditioning, Inc.
Richard D. Chappuis, Jr., Voorhies & Labbe, Lafayette, LA, for Defendant/Appellee, Kirby M. Pecot d/b/a Pecot & Company Architects.
Albert Dale Clary, Attorney at Law, Baton Rouge, LA, for Defendant/Appellee, M & E Consulting, Inc.
Court composed of ULYSSES GENE THIBODEAUX, MICHAEL G. SULLIVAN, and BILLY H. EZELL, Judges.
SULLIVAN, Judge.
Plaintiffs in these three consolidated suits allege that they were injured from exposure to toxic mold on premises owned by the Tunica-Biloxi Indians of Louisiana, d/b/a Paragon Casino Resort (the Tribe). They appeal the trial court's dismissal of their claims against the Tribe based upon sovereign immunity and against other Defendants based upon the inability to join the Tribe as a party necessary for just adjudication under La.Code Civ.P. arts. 641 and 642. They also object to the consolidation of their suits at the trial level. For the following reasons, we affirm the judgment of the trial court.

Procedural History
In the first suit, nineteen employees and nine of their spouses (the Bonnette Plaintiffs) filed an intentional tort claim against New Horizon Kids Quest, IV, Inc. (Kids Quest), a childcare facility within Paragon Casino Resort, and negligence claims against numerous entities involved in the construction of a new hotel at the resort.[1] They alleged that, while working at Kids Quest, the employees sustained personal injury from exposure to toxic mold that developed from the faulty construction, design, and maintenance of the new hotel. In the second suit, Thurman Dunn, a security guard employed by the Tribe, and his wife (the Dunn Plaintiffs) filed an intentional tort claim against the Tribe and negligence claims against the construction entities, alleging that Mr. Dunn was exposed to toxic mold while working in areas of the resort found to contain that substance. The Bonnette and Dunn cases *4 were assigned to Division "B" of the Twelfth Judicial District. In the third suit, the parents of nine children who were cared for by Kids Quest (the Jeansonne Plaintiffs) filed negligence claims against Kids Quest and the construction entities, except the Tribe and its enterprise, Tunica-Biloxi Construction Company. Kids Quest, however, filed a third-party demand against the Tribe. The Jeansonne case was assigned to Division "A" of the Twelfth Judicial District.
In each suit, various Defendants filed exceptions of lack of subject matter jurisdiction, lis pendens, failure to state a cause of action, and failure to name an indispensable party. Additionally, Kids Quest and Berg, Inc., an engineering firm, filed motions to consolidate all three cases.
After a hearing on April 29, 2002, the trial court granted the motion to consolidate the Jeansonne case, pending in Division "A" with the Bonnette and Dunn cases in Division "B." The trial court then handed down written reasons, based upon two previous hearings on March 4, 2002 and March 25, 2002, granting the Tribe's exception to subject matter jurisdiction based upon its sovereign immunity and the exceptions of failure to join an indispensable party filed by some of the other Defendants. Plaintiffs in all three suits appeal.

Sovereign Immunity
In their first assignment of error, Plaintiffs argue that the Tribal-State compact, which governs the Tribe's class III gaming activities pursuant to the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701-2721, includes a waiver of tribal sovereign immunity. The trial court disagreed, finding that the compact, instead, preserved the Tribe's sovereign immunity.
In Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 1702, 140 L.Ed.2d 981 (1998) (emphasis added), the United States Supreme Court reaffirmed that "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Acknowledging that there are "reasons to doubt the wisdom of perpetuating the doctrine," the Court in Kiowa, nonetheless, refused to limit or restrict the doctrine in deference to Congress' role in reforming tribal immunity. Id. at 758, 118 S.Ct. at 1704. Accordingly, the Court upheld the Kiowa Tribe's immunity in a state court suit brought by a payee to collect on a note upon the tribe's default, stating: "Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation. Congress has not abrogated this immunity, nor has [the tribe] waived it, so the immunity governs this case." Id.Sat 760, 118 S.Ct. at 1705.
Plaintiffs correctly point out that the Supreme Court recently limited a tribe's civil jurisdiction over nonmembers in Nevada v. Hicks, 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001), by holding that a tribe did not have jurisdiction over a tort claim against state officers who executed a search warrant on a reservation for evidence of an off-reservation crime. However, the Court in Nevada specifically limited its holding to those facts, recognizing that Indian tribes may still exercise civil jurisdiction over nonmembers who maintain consensual relationships with the tribe or its members or when it is necessary to protect tribal self-government or to control internal relations.
The Kiowa Court recognized that Indian gaming, through the IGRA at 25 U.S.C. § 2710(d)(7)(A)(ii), is one area where Congress has restricted tribal immunity. That section authorizes a state "to enjoin a class III gaming activity located on Indian lands *5 and conducted in violation of any Tribal-State compact ... that is in effect." (Emphasis added.) As explained in Florida v. Seminole Tribe of Florida, 181 F.3d 1237 (11th Cir.1999), however, the IGRA abrogates sovereign immunity only in the narrow circumstance where a tribe is conducting gaming operations in violation of an existing compact. Further, by its own terms, that section authorizes only suits by a state to enjoin gaming activities.
To relinquish its sovereign immunity, an Indian tribe's waiver must be clear. C & L Enters. Inc. v. Citizen Band Potawatomi Indian Tribe of Okla., 532 U.S. 411, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001). A waiver of sovereign immunity cannot be implied, but must be unequivocally expressed. Ute Distribution Corp. v. Ute Indian Tribe, 149 F.3d 1260 (10th Cir.1998). In C & L Enterprises, the Supreme Court found such a clear waiver in an arbitration agreement in a roofing contract that provided for the finality of an arbitration award and for the entry of a judgment upon it in any court having jurisdiction. The agreement also contained a choice-of-law clause specifying that the law where the project was located (which was off-reservation) would control. In Ute Distribution Corp., however, the court found that a federal statute did not contain a waiver of sovereign immunity, where it lacked any language expressly authorizing a cause of action in federal court against a tribe. It is with this backdrop that we examine the Tribal-State compact.
The Tribal-State compact begins by recognizing that the Tribe is a "sovereign Indian Nation that possesses powers of self-government" and that the State and the Tribe, through state legislation and tribal resolution, are authorized to enter into this compact "for the conduct of Class III gaming." Section 2(H) provides: "The jurisdiction and waiver of sovereign immunity provided by this Tribal-State Compact shall be strictly limited to matters and issues arising directly from this Tribal-State Compact."
Section 3, entitled "TERRITORIAL AND GENERAL JURISDICTION," provides in part:
(A) The Tunica-Biloxi Indian Tribe of Louisiana and the State of Louisiana recognize and respect all territorial rights and the independent sovereign existence of each other, and shall:
(1) Accord the fullest mutual respect to the legal institutions and cultural traditions of the Tunica-Biloxi Indian Tribe of Louisiana and the State of Louisiana, insofar as they are consistent with preserving and protecting the health, safety, and welfare of all.
(2) Have all necessary and concurrent jurisdiction to fully ensure the protection of the public, the Tunica-Biloxi Indian Tribe of Louisiana, and the State of Louisiana.

....
(B) The Tunica-Biloxi Indian Tribe of Louisiana and the State of Louisiana shall retain all sovereignty and immunity to suit while discussing, negotiating, or confecting this Tribal-State Compact. The Tunica-Biloxi Indian Tribe of Louisiana and the State of Louisiana intend and agree that all issues purely of Tribal law are to be determined in accordance with the legal mechanisms of the Tunica-Biloxi Indian Tribe of Louisiana, and that all other issues are to be determined in accordance with the provisions of this Tribal-State Compact and the legal mechanisms of the State of Louisiana.
(C) In the interest of clarity of authority, and to preserve and to protect the health, safety, and welfare of all, the *6 Tunica-Biloxi Indian Tribe of Louisiana and the State of Louisiana shall:
(1) Preserve the full territorial and subject matter jurisdiction of the Tunica-Biloxi Indian Tribe of Louisiana.
(2) Preserve the full territorial and subject matter jurisdiction of the State of Louisiana.
(Emphasis added.)
Section 10, entitled "OPERATION AND MANAGEMENT REGULATIONS," contains numerous requirements so that "[a]ll Class III gaming shall be conducted in such a manner that ensures, to the maximum extent practicable, that it is secure, honest, and that the interests of the Tunica-Biloxi Indian Tribe of Louisiana, the State of Louisiana, and the public are protected at all times." To this end, Section 10 requires that all Class III gaming facilities comply with all state building and fire codes, even though those standards do not apply to other facilities built or owned by the Tribe; that the Tribe shall maintain general liability and workers' compensation insurance "subject to direct action under the Louisiana law"; and that each such policy shall be deemed to contain "an exclusion that the insurer or the insured shall not be entitled to make any claim of sovereign immunity in defense of liability." Section 10, in paragraph (A)(6), also provides in part:
Prior to the commencement of Class III gaming and upon the concurrence of the State of Louisiana, the Tunica-Biloxi Indian Tribe of Louisiana shall adopt reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities and operation. The Tunica-Biloxi Tribe of Louisiana shall not be deemed to have waived its sovereign immunity from suit with respect to such claims by virtue of any provision of this Tribal-State Compact, but may adopt a remedial system analogous to that available for similar claims arising against the State of Louisiana.
(Emphasis added.)
In finding that the Tribe did not waive its sovereign immunity in the Tribal-State compact, the trial court concluded:
These specific clauses ... clearly confirm to this Court that the Tribe has not waived sovereign immunity. This finding is even more evident when considering that the compact begins with language confirming that the Tunica-Biloxi Indian Tribe of Louisiana is a sovereign Indian nation and further language within the compact acknowledging that the Tribe and the State recognize and respect the territorial rights and independent sovereign existence of each other. Therefore, a review of the above clearly confirms to this Court that this Court does not have subject matter jurisdiction.
Plaintiffs strongly argue that the reference to concurrent jurisdiction in Section 3(A)(2) represents the Tribe's consent to be sued in state court. The trial court disagreed, instead interpreting that section as providing concurrent jurisdiction for suits of the same subject matter in which the Tribe is not a party. We find the trial court's interpretation reasonable in light of the requirement that a waiver of sovereign immunity be unequivocal. Considering that the compact is an agreement between the Tribe and the State, we do not find the language in Section 3(A)(2) represents the Tribe's consent to be sued by a third party in state court.
Plaintiffs also contend that other provisions of the compact evidence the Tribe's consent to be sued in state court, including the requirement that the gaming facilities be subject to state fire and building codes and that the State may conduct *7 independent investigations and have access to the Tribe's land and buildings at all times. By consenting to some regulation by the State, however, the Tribe has not consented to be sued by a third party in state court.
Plaintiffs also cite the requirement that the insurance policies mandated by the compact not allow the defense of sovereign immunity as to liability. They also argue that the Tribe's express retention of sovereign immunity with respect to tort claims by gaming patrons is further evidence that their suit is proper in state court because they were not patrons of the casino. We first note that the compact prohibits the insured or insurer from raising the defense of sovereign immunity as to liability, not as to jurisdiction. Per our understanding, the Tribe does not argue that it can never be liable to Plaintiffs; its contention is that tribal court is the only proper forum because of its status as a sovereign nation. Additionally, Plaintiffs' interpretation of this clause as prohibiting an objection to jurisdiction based upon sovereign immunity appears inconsistent with the Tribe's retention of sovereign immunity as to the claims of casino patrons. It would seem illogical to prohibit such an objection, then to waive that prohibition for many of those that it was intended to protect. Finally, Plaintiffs' argument that the Tribe has consented to state jurisdiction in some tort suits because it expressly preserved its immunity in others is inconsistent with the requirement that a waiver of immunity be express and unequivocal. The trial court did not err in granting the exceptions to subject matter jurisdiction in state court.

The Tribe as a Party Necessary for Just Adjudication
In their second assignment of error, Plaintiffs argue that the trial court erred in dismissing their claims against the remaining Defendants based upon their inability to join the Tribe as a party necessary for just adjudication under La. Code Civ.P. arts. 641 and 642. Those articles provide:
Art. 641. Joinder of parties needed for just adjudication
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
Art. 642. Determination by court whenever joinder not feasible
If a person described in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed. The factors to be considered by the court include:
(1) To what extent a judgment rendered in the person's absence might be prejudicial to him or those already present.
(2) The extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by shaping of relief, or by other measures.
(3) Whether a judgment rendered in the person's absence will be adequate.
(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
*8 Plaintiffs argue that Atwood v. Grand Casinos of Louisiana, Inc.Coushatta, 01-1452 (La.App. 3 Cir. 6/5/02), 819 So.2d 440, writ denied, 02-1873 (La.10/14/02), 827 So.2d 426, a case that had not been decided at the time of the trial court's ruling, mandates reversal of the dismissal of the remaining Defendants. In Atwood, a former blackjack dealer and a patron of the Grand Casino in Kinder, Louisiana, sued the company that managed the casino for the Coushatta Tribe as well as a tribe employee for defamation after the plaintiffs were accused of cheating while playing blackjack. (The plaintiffs also sued other parties who had been dismissed by the time the trial court considered the remaining defendants' exception of nonjoinder.) In that case, we found that the Coushatta Tribe was not a necessary party under Article 641 and reversed the trial court's ruling to the contrary. For the following reasons, we find Atwood distinguishable from the present case.
In addition to facing vicarious liability as the employer of all casino personnel, the absent defendant in Atwood, the Coushatta Tribe, could have been solidarily liable as an employer who ratified or authorized an employee's defamatory statements made in the course and scope of his employment. Even if these facts produced only a joint obligation, we considered that obligation to be indivisible. We then turned to La.Civ. Code art. 1789, which provides in part: "When a joint obligation is indivisible, joint obligors ... are subject to the rules governing solidary obligors." Under La. Code Civ.P. art. 643, "one or more solidary obligors may be sued to enforce a solidary obligation, without the necessity of joining all others in the action." Accordingly, we found that the Coushatta Tribe was not a necessary party in that litigation.
The present controversy, however, does not involve the Tribe's vicarious liability for the actions of its employees. The Tribe faces liability as the owner of the premises that allegedly caused the Plaintiffs' harm and, through its enterprise, the Tunica-Biloxi Construction Company, as the general contractor of the new hotel project. The other Defendants are not tribal employees, but rather are contractors who participated in the construction of the new hotel, including an engineering firm, an architect, a sheetrock contractor, a heating and air-conditioning company, and a sprinkler installation company. Because there is no allegation that the remaining Defendants conspired with the Tribe to commit an intentional or willful act, they are not solidary obligors. La. Civ.Code art. 2324(A). Under paragraph B of Article 2324:
If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.
(Emphasis added.) Thus, under the facts alleged, each Defendant would be liable only for the damages caused by its percentage of fault rather than for the entire amount of damages, as would a solidary or vicarious obligor.
This substantive change in the law, effective April 16, 1996, impacts application of La.Code Civ.P. arts. 641 and 642. The facts as alleged suggest the possibility of *9 independent negligence on the part of the Tribe as a joint obligor, but it is immune from suit in state district court. Hence, complete relief for those already parties cannot be achieved because the remaining Defendants would only be responsible for the percentage of fault, if any, that is apportioned to them. Additionally, the Tribe's absence would impair its ability to protect its interest in the litigation and would subject the remaining parties to the risk of multiple or inconsistent obligations, should the matter be pursued in tribal court. Under Article 642, a judgment rendered in the Tribe's absence would be inadequate because of the trial court's inability to adjudicate its fault among other joint obligors. Further, the Plaintiffs do have an adequate remedy in tribal court. Accordingly, we find no error in the trial court's dismissal of Plaintiffs' suits under Articles 641 and 642.
We also note that two federal district court cases have reached similar results in applying Federal Rule of Civil Procedure 19 in cases of Indian sovereign immunity. In Havekost v. Grand Casinos of Louisiana, 00-2204 (W.D.La.12/8/00), 2000 WL 33909243, the plaintiff alleged that she was injured when her chair at the casino broke. After discussing Rule 19, which contains the same factors that are in Articles 641 and 642, the court concluded that the plaintiff's inability to join the Coushatta Tribe in her suit against several other gaming entities required dismissal for nonjoinder. In so doing, the court stated: "It is clear from the facts of this case that The Tribe is an indispensable party and it is equally clear that The Tribe is immune from suit and cannot be joined. The plaintiff has previously filed suit in the Tribal Court. This Tribal Court is the proper procedural venue." Id. at p. 2. In Gore v. Grand Casinos of Louisiana, 98-1253A (W.D.La.9/29/98), 1998 WL 1990523, which arose from a slip-and-fall accident in a casino, the court also found the tribal owner of the premises, which was immune from suit in state or federal court, was an indispensable party whose nonjoinder required dismissal of the plaintiffs' suit against the casino management company. The court concluded:
In light of the Tribe's potential liability, adjudication without its joinder will result in prejudice. The Gores have not suggested, nor does the court perceive, any way to tailor relief to avoid that prejudice. Due to the potential liability of the Tribe, any judgment will be inadequate without the Tribe's participation. Finally, the Gores do have an adequate remedy if this case is dismissed. The proceedings in Tribal Court provide a forum in which to air the Gores' grievances. Constitutional rights denied in that court, should that fact exist, may allow the Gores to seek review and relief in this court. In sum, the Tribe is an indispensable party that cannot be joined.
Id. at p. 5.

Consolidation
In their final two assignments of error, Plaintiffs argue the trial court erred in transferring the Jeansonne case from Division "A" and consolidating it with the other cases pending in Division "B." Because La.Code Civ.P. art. 1561 refers to consolidation for trial, Plaintiffs argue that the trial court erred in immediately dismissing Jeansonne upon consolidation. Plaintiffs also argue that the trial court ordered consolidation without finding that common issues of law and fact predominate and without considering potential prejudice to the parties and jury confusion.
Article 1561 provides:
A. When two or more separate actions are pending in the same court, the *10 section or division of the court in which the first filed action is pending may order consolidation of the actions for trial after a contradictory hearing, and upon a finding that common issues of fact and law predominate.
B. Consolidation shall not be ordered if it would do any of the following:
(1) Cause jury confusion.
(2) Prevent a fair and impartial trial.
(3) Give one party an undue advantage.
(4) Prejudice the rights of any party.
"A trial court has wide latitude with regard to the consolidation of suits pending in the same court." Ferguson v. Sugar, 00-2528, p. 7 (La.App. 4 Cir. 12/19/01), 804 So.2d 844, 848. Because the trial court's power to consolidate under Article 1561 is discretionary, its decision is reviewed under an abuse of discretion standard. See Kimble v. Reason, 626 So.2d 6 (La.App. 1 Cir.1993).
Before ruling on the motion to consolidate, the trial court entertained detailed argument from all sides that included a discussion of each factor in Article 1561. The trial court also compared the allegations of each petition "side-by-side," then concluded that "[t]his, to me, is not even a close question as to `consolidation.'" Although Plaintiffs argue that the trial court failed to make a finding that common issues of fact and law predominate, such a finding can be inferred from its reasons. Further, we find that the decision to consolidate is supported by the record.
The resolution of all three cases will require one factual determination: which party's (or parties') conduct, if any, was responsible for the presence of toxic mold. All three cases involve claims of negligence. Although not all Defendants are named in each suit, the factual allegations against the Defendants, when they are named, are substantially similar in each case. The two cases pending in Division "B" contain both intentional tort and negligence claims; hence, consolidation with the third suit, which contains only a negligence claim, should not confuse the jury, since both theories would be presented to the same jury even without consolidation. We further disagree with Plaintiffs' argument that their number of over forty would confuse the jury, when it is clear that each Plaintiff belongs to a distinct group. Although the jury will have to determine each Plaintiff's damages individually, we do not find their number overwhelming. Plaintiffs have not demonstrated how consolidation will prejudice their rights or prevent a fair and impartial trial.
Plaintiffs also argue that the trial court erred in dismissing the Jeansonne case immediately after consolidation, when consolidation should be for trial only. However, in Ferguson, 804 So.2d 844, the court permitted the consolidation of a petition for discovery purposes pursuant to La.R.S. 40:1299.47(2)(a) assigned to one division with the underlying medical malpractice claim pending in another. Even though the discovery petition was not consolidated "for trial," the court permitted consolidation upon a finding that common issues of fact and law predominated on the issue of prescription. Further, the trial court dismissed the Jeansonne case only after Plaintiffs stipulated that the evidence previously heard in the Bonnette and Dunn cases applied to it. We find no error in the trial court's consolidation of these three cases.

Decree
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Plaintiffs-Appellants.
AFFIRMED.
THIBODEAUX, J., concurs in part and dissents in part with written reasons.
*11 THIBODEAUX, J., dissenting in part.
I dissent from the majority's view that the Tribe is a party necessary for just adjudication under La.Code Civ.P. arts. 641 and 642.
The 1995 amendments to Articles 641-646 were intended to codify Louisiana State, Department of Highways v. Lamar Advertising Co. of La., Inc., 279 So.2d 671 (La.1973). See Comments to La.Code Civ.P. art. 641. Lamar emphasized the necessity for a factual analysis prior to the determination of a party's status. Speaking to the differences in the procedural rules regarding indispensable versus the necessary parties, the court observed that "great care must be exercised to ensure a proper factual analysis of the party's interest in the case before a determination of the party's classification is made." Id. at 675. In Lamar, the trial and appellate courts arrived at the determination that certain landowners were indispensable parties on the basis of the pleadings and arguments of counsel. In disapproving this procedure, the Louisiana Supreme Court explained:
Clearly, no factual analysis of the rights of the parties and absent persons could have been made. Thus, it is difficult to determine how the previous courts arrived at the conclusion that the property rights of the landowners would be detrimentally affected by a judgment in these proceedings, in the absence of any evidence to support such a conclusion.
Id. The fact that the rights of the various parties in this case, including the Tribe, may be affected is insufficient to support a holding that the Tribe is indeed a party necessary for just adjudication.
The trial court held:
In the case at bar the relationship between the Tribe and New Horizon's Kid's Quest is one that clearly shows that the alleged liability of the Tribe is indispensable to the claims of Kid's Quest. The same holding also applies to the various other defendants as contractors and/or sub-contractors. The Tribe owns the property where the alleged tortious acts occurred and the Tribe was the party responsible, as alleged in the Petition, for the planning and construction of the new hotel. Their actions and their relationships between the various defendants are issues which must be determined by a trier of fact. Since this Court lacks jurisdiction to sit in judgment on the activities conducted by the Tribe, the entirety of this litigation must be dismissed in State Court with further prosecution to proceed in Tribal Court or any other court of proper jurisdiction.
Accordingly, the Exception of Lack of Indispensable Party is granted based on the provisions of Code of Civil Procedure Articles 641 and 642.
It is true that the relationships of the various parties in this litigation have to be determined by a trier of fact. Before the "actions and their relationships between the various defendants" are determined, however, the trial court must decide who those defendants are. It must conduct an evidentiary hearing to determine if those factors in La.Code Civ.P. arts. 641 and 642 are satisfied. The trial court failed to conduct such a hearing. The hearing conducted on March 4, 2002, focused on the exceptions of lis pendens and the lack of subject matter jurisdiction. It appears that the only empirical evidence was the Tribe's ownership of the facility. That in my view does not satisfy the close factual analysis which must be given for a determination of whether a party is one that is necessary for just adjudication. Indeed, in Lamar, the supreme court reversed the trial and appellate courts because those courts "did not engage in a close factual analysis to determine whether or not the *12 absent landowners were in fact indispensable to the litigation." Lamar, 279 So.2d at 677.
As I indicated earlier, the fact that the rights of the party may be affected is too speculative. As Lamar poignantly explained:
The result of such a rule, if upheld, is to permit skillful counsel, by filing conclusory pleadings and by artful argument, to convince a trial judge that property rights of an absent third person may be affected and therefore have a plaintiff's suit delayed or dismissed, without any factual determination whether these contract rights will in fact be affected by the court's action, or to what extent they will be affected.
Id. at 676. (Emphasis in original).
I would, therefore, reverse the trial court's judgment adjudicating the Tribe as a party necessary for just adjudication on the basis that the court had insufficient evidence to decide this issue. I would remand for the purpose of conducting a hearing where sufficient facts could be presented to the court for that ultimate determination.
For the foregoing reasons, I respectfully dissent.

ON REHEARING
Court composed of ULYSSES GENE THIBODEAUX, Chief Judge, MARC T. AMY, MICHAEL G. SULLIVAN, ELIZABETH A. PICKETT, and BILLY H. EZELL, Judges.
MICHAEL G. SULLIVAN, Judge.
Rehearing was granted in the captioned matters and was referred to a five-judge panel.
After considering the arguments of counsel, we conclude that the original opinion was correct. Judgment of the trial court is affirmed. Costs are assessed to Plaintiffs/Appellants.
AFFIRMED.
THIBODEAUX, C.J., concurs in part, dissents in part, and assigns reasons.
THIBODEAUX, C.J., concurring in part and dissenting in part.
I would deny in part and grant in part the application for rehearing filed by the plaintiffs.
While there is some support for a waiver of immunity by the Tribe in the Tribal-State Compact, that support is too ambiguous. A waiver of immunity must be clearly expressed and unequivocal. Kiowa Tribe of Oklahoma v. Manufacturing Technologies, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), though somewhat critical of the extension of sovereign immunity to non-traditional tribal enterprises such as gaming, nonetheless concluded that legislative action was necessary to extinguish tribal sovereign immunity. Like the United States Supreme Court, I entertain serious doubts about the propriety of sovereign immunity under the circumstances of this case. I am not prepared, however, to judicially impose limits where doubts still exist.
I continue to feel that the trial court's joinder of the Tribe as a party necessary for just adjudication is incorrect. In fact, I would go even further than the views expressed in my original dissent. Rather than remand for a full hearing to establish the relationship of the parties, I would reverse and render judgment.
Articles 641 and 642 of the Louisiana Code of Civil Procedure are patterned after Rule 19 of the Federal Rules of Civil Procedure. While there is a slight difference in language, the substance is substantially the same. Thus, Temple v. Synthes Corp., Ltd., 498 U.S. 5, 111 S.Ct. 315, 112
*13 L.Ed.2d 263 (1990), is highly instructive. The Tribe is a potential joint tortfeasor just as the doctor and hospital were potential joint tortfeasors in Temple. The United States Supreme Court explained:
It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.... The Advisory Committee Notes to Rule 19(a) explicitly state that "a tortfeasor with the usual `joint-and-several' liability is merely a permissive party to an action against another with like liability." ... There is nothing in Louisiana tort law to the contrary.
Id. at 7, 111 S.Ct. 315. (Citations omitted).
Louisiana Civil Code Article 2324 does not change the result. Article 2324 states that if liability is not solidary pursuant to paragraph A of that Article, then it is joint and divisible. In other words, Article 2324 changed the relationship of the parties in a tort action and thus affected the legal consequences flowing from that relationship. It does not say that all joint tortfeasors are necessary parties. In fact, as I see it, the companion to Article 2324, Article 2323, supports the plaintiffs. The majority opinion states that "[t]he facts as alleged suggest the possibility of independent negligence on the part of the Tribe as a joint obligor, but it is immune in state district court." However, Articles 2323 and 2324 both say that fault will be determined regardless of immunity.
While it is true that defendants other than the Tribe will be responsible only for their respective percentages of fault, the parties to the action (the plaintiffs and the remaining named defendants) will have complete relief vis-a-vis each other. If complete relief cannot be had except by joinder of all parties, that is, all joint tortfeasors, then how does one join a phantom tortfeasor? Does every party whose fault or negligence causes injury have to be joined? No. Neither Article 2323 nor La.Code Civ.P. art. 1812(C) requires this. In fact, La.Code Civ.P. art. 1812(C)(2)(a) specifically refers to a "nonparty" whose fault can be determined and placed on a jury verdict sheet.
A likely interpretation of the majority opinion on the joinder of the Tribe is that all parties whose liability is joint and divisible must be parties necessary for just adjudication and, therefore, must be joined. While that tenuous conclusion may be reached on the basis of our decision today, it certainly is not the law and should not be the law.
Temple did not remand. Temple concluded that because the threshold requirements of Rule 19(a) (similar to Article 641) had not been met, no inquiry was necessary under Rule 19(b). (Similar to Article 642). Thus, rather than remanding. I would simply reverse.
I would also grant a rehearing and reverse on the question of consolidation. The error in joining the Tribe in the Jeansonne case is particularly glaring because the Tribe was not sued. The plaintiffs sued only Kids Quest. Kids Quest then filed a third party demand against the Tribe. The plaintiffs are seeking 100% of the damages against Kids Quest. Presumably, Kids Quest is seeking indemnity or contribution from the Tribe in the event it becomes liable in damages. The Tribe is not needed for complete relief. If Kids Quest is burdened with liability and damages, it can then proceed against the Tribe in tribal court, or state court for that matter. The Tribe will then assert any defenses it would have. Thus, it is not being prejudiced. Further, to allow the trial court to consolidate by comparing the petitions "side by side" in drawing a conclusion with regard to the existence of common issues of law and fact does not *14 equate to a hearing and a finding as contemplated by La.Code Civ.P. art. 1561.
For the foregoing reasons, I respectfully concur in part and dissent in part.
NOTES
[1] The other Defendants are the Tribe, the owner of the premises; Tunica-Biloxi Construction Company, the general contractor of the project; Berg, Inc., an engineering firm; Kirby Pecot d/b/a Pecot & Company Architects; Glen Moreau d/b/a G.W. Moreau Metal Buildings; JES, Inc., a sheetrock contractor; Larry Stockwell Heating and Air-Conditioning, Inc., and Jefferson Sprinkler, Inc. Additionally, M & E Consulting, Inc. intervened as a Defendant in the Bonnette case.