EDWIN A. LOMBARD, Judge.
hThe Appellant, James Babst, Esq., seeks review of the nullification of an attorneys’ fee award and being ordered to pay thé Appellee, Bruce Feingerts, $5,000 and costs by the Office of Workers’ Compensation Administration. Finding that the Office of Workers’ Compensation Administration did not abuse its discretion in annulling its prior judgment and awarding attorneys’ fees, we affirm the judgment of the Office of Workers’ Compensation Administration.
Facts and Procedural History
This appeal involves an attorneys’ fee dispute stemming from Mr. Babst’s representation of Mr. Feingerts before the Office of Workers’ Compensation Administration (“OWCA”). Mr. Feingerts was severely injured in a car accident in Orleans Parish in February 2001. He pursued damages by filing a lawsuit in the Civil District Court and filing a claim in the OWCA.
Mr. Feingerts initially retained the law firm of Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C. (“the Gains-burgh Firm”), to represent him in his personal injury suit, which was filed in the district court in December 2001. The Gainsburgh Firm also filed the claims form that initiated Mr. Feingerts’ workers’ com *997 pensation claim related to the 2001 accident. The instant appeal does not involve Mr. Feingerts’ civil claims.
|gThe Gainsburgh Firm later withdrew as counsel for the workers’ compensation portion of Mr. Feingerts’ claim. The following law firms and attorneys represented Mr. Feingerts before the OWCA in the order listed: 1.) Favret Demarest Firm; 2.) Dwight W. Norton; 3.) Manard & May-eaux Firm, and 4.) Wegmann & Babst, LLC, specifically Mr. Babst.
Mr. Feingerts workers’ compensation matter went to trial before the OWCA while he was represented by the Manard & Mayeaux Firm. At trial, Mr. Feingerts was awarded medical benefits in the amount of $187,661.95, as well as related mileage costs he incurred while receiving medical treatment against American Casualty Company of Reading, PA (“American”), the workers’ compensation insurer of Mr. Feingerts’ law firm. See Feingerts v. Am. Cas. Co. of Reading, 09-1209, p. 3 (La.App. 4 Cir. 3/10/10), 34 So.3d 358, 361.
Both parties filed cross-appeals. Mr. Babst began representing Mr. Feingerts post-trial during his appeal of the workers’ compensation claim before our Court, which affirmed in part the judgment of the OWCA, reversed the mileage award, and reduced the award of medical benefits to $141,276.07.[1] Feingerts, 09-1209, p. 18, 34 So.3d at 369.
Subsequently, in March 2010, Mr. Fein-gerts’ civil suit was settled for approximately $785,000. Mr. Babst allegedly advised Mr. Feingerts that such a large civil settlement would adversely affect the resolution of Mr. Feingerts’ workers’ compensation claim because American would have both a lien against the | ¡¡settlement that would be satisfied in full and a credit against any claims that Mr. Feingerts might have for future medical treatments.[2]
American and Mr. Feingerts eventually reached an agreement whereby American consented to the settlement of the personal injury matter and waived its lien against Mr. Feingerts’ civil settlement. Additionally, American agreed to pay $50,000 in cash to Mr. Feingerts. In exchange, Mr. Feingerts consented to releasing American from all further workers’ compensation liability stemming from the 2001 accident.
The parties executed and filed a joint petition to approve the workers’ compensation settlement in September 2010, which was approved by the OWCA on October 7, 2010. Subsequently, American submitted its $50,000 check, waived its lien on the personal injury settlement, and consented formally to the settlement.[3] As a result of the workers’ compensation settlement, Mr. Feingerts did not receive the $141,276.07 award of medical expenses rendered by our Court.
After the workers’ compensation settlement, a dispute arose between Mr. Fein-gerts and Mr. Babst regarding the correct computation of the workers’ compensation fee. Mr. Babst’s position is that the aggregate workers’ compensation fee is not based upon the $50,000 sum paid by Amer *998 ican, rather the total legal fee should be the statutorily-set 20% of the amount of the $141,276.07 judgment rendered on appeal by our Court, plus $27,000 in interest. Thus, Mr. Babst maintains that the workers’ compensation fee is approximately 20% of 14$168,276.07, or $33,655.21. However, Mr. Feingerts opines that the workers’ compensation fee should be calculated based upon the $50,000 amount, and, thus, is $10,000, or 20% of $50,000.
Mr. Babst had 30 days from the settlement of the claim or until November 7, 2010, to apply to the OWCA for the approval of his attorney fees. On November 8, 2010,[4] Mr. Babst filed a “Motion for Approval of Attorney Fees and Costs” (“motion for approval”) with a proposed order in the OWCA, which signed the order on the same day.[5] The order approved a $33,655.21 fee, of which Mr. Babst’s share was $12,076.05.
There is disagreement between the parties as to whether Mr. Babst sufficiently made efforts to contact Mr. Feingerts to discuss the subject motion prior to filing it; however, it is clear that Mr. Feingerts was unaware that said motion was going to be and/or was filed.
Upon learning, through an e-mail from Mr. Babst, of the motion and the OWCA’s award of attorneys’ fees made by the OWCA, Mr. Feingerts expressed his dissatisfaction with the award and informed Mr. Babst that he [Mr. Feingerts] wanted the motion for approval to be withdrawn. Mr. Babst, however, refused to withdraw his motion and advised Mr. Feingerts to file an opposition to the motion “as soon as possible”. Mr. Babst did not advise Mr. Feingerts on taking any further action to oppose the OWCA judgment setting the workers’ compensation attorneys’ fees, nor did he terminate their attorney-client relationship.
|fiMr. Feingerts did not file an opposition to the motion for approval, nor did he seek an appeal or other relief.[6] On November 8, 2011, Mr. Feingerts filed a petition for annulment of the approval on attorneys’ fees in the OWCA. The OWCA granted said motion and awarded Mr. Feingerts $10,000 in fees on November 15, 2011; nevertheless, this order was set aside on the motion of Mr. Babst, who had not been served with the petition for annulment.
Mr. Feingerts’ petition for annulment was reset. In response, Mr. Babst filed the following exceptions to the petition: res judicata, no cause of action, lack of jurisdiction, failure to join necessary parties, and that the procedure was unauthorized by applicable procedural rules. These exceptions were overruled by the OWCA, which also dismissed the petition for annulment finding that Mr. Feingerts failed to seek review of the fee order via an appeal or a motion for new trial.
Mr. Feingerts subsequently filed a motion for new trial from the denial of the petition for annulment, which was granted by the OWCA. The matter was retried *999 resulting in the OWCA reversing itself and annulling the prior attorneys’ fee order. The OWCA rendered judgment on October 10, 2012, holding: 1.) that there was sufficient fraud and ill practice on the part of Mr. Babst to justify the nullification of the prior judgment; 2.) the OWCA reduced the fee award to the workers’ compensation lawyers to 20% of $50,000; and 3.) Mr. Babst was ordered to pay Mr. Feingerts $5,000 in attorneys’ fees plus costs.
| ¿Thereafter, Mr. Feingerts filed a Motion for Clarification of Judgment on or about October 22, 2012, to rectify an ambiguity regarding the OWCA’s award of costs and attorney fees for the necessity having had to file the Petition for Annulment. The OWCA granted said motion on October 25, 2012, rescinded its October 10, 2012 judgment and issued a revised judgment that clarified the issue of costs and fees.
Mr. Babst timely filed the instant appeal seeking review of the October 25, 2012 judgment, and raises three (3) assignments of error:
1. The OWCA erred in exercising jurisdiction over the action to annul the fee order of November 8, 2010;
2. The OWCA erred in overruling the objection that Mr. Feingerts failed to join parties needed for the just adjudication of the action to annul; and
3. The OWCA erred in annulling the fee award of November 8, 2010.
Standard of Review
Appellate courts defer to a district court’s exercise of discretion in determining whether a judgment should be annulled. Duckworth Properties, L.L.C. v. Williams, 10-0244, p. 2 (La.App. 4 Cir. 11/24/10), 52 So.3d 287, 289. Thus, in our review of the OWCA’s judgment, we analogize the standard to be deference to the OWCA’s exercise of discretion.
The OWCA Lacked Jurisdiction to Annul the Fee Order
The first assignment of error raised by Mr. Babst is that the OWCA did not have jurisdiction to annul its November 8, 2010 order, and, thus, the OWCA erred in overruling his exception regarding the OWCA’s lack of jurisdiction. Mr. Babst avers that the OWCA is an administrative tribunal that solely has to the power to |7adjudicate claims or disputes that arise out of the Workers’ Compensation Act under La.Rev.Stat. 23:1310.3(E), namely disputed claims for benefits.
Mr. Babst alleges that the OWCA lacks jurisdiction over petitions for annulment for three (3) main reasons:
1. The OWCA’s exercise of jurisdiction over the petition for annulment encroaches upon the original jurisdiction of the district courts under La. Const. Art. V, § 16(A)(1). Furthermore, exception to the general rule that district courts are vested with original jurisdiction in civil matters must be narrowly construed. Taylor v. Hanson N. Am., 08-1182 [08-2282] (La.App. 1 Cir. 8/04/09), 21 So.3d 963. The mere involvement of the workers’ compensation statute or a workers’ compensation claim does not automatically subject the entire matter to the jurisdiction of the OWCA. Id. [citation omitted].
2. There is not explicit grant of jurisdiction to the OWCA to consider a petition for annulment an earlier OWCA judgment or order. When neither party appeals an OWCA judgment, the judgment “shall be final.” La. R.S. 23:2310.5(B). Furthermore, he contends that the continuing jurisdiction that the OWCA would have to modify an earlier judgment on benefits when a showing of *1000 changed circumstances has been made, is precluded, under La. R.S. 23:1310.8(A)(3), wherein the settlement of the underlying claim has been approved because an award approving a settlement is “final as to the rights of all parties to said petition and thereafter the workers’ compensation judge shall have not jurisdiction over any claim for the injury or any results arising from same.”
3. An appeal was required for post-judgment relief under La.Code Civ. Proc. art. 2083(A). The OWCA was granted the authority by our state legislature to modify a new trial motion or a motion to amend to correct simple errors and corrects while the OWCA still had jurisdiction and prior to the passing of the delays of an appeal passing. There is no legislative provision to annul orders and judgments over which the OWCA no longer has jurisdiction.
We disagree. When a dispute “arises out” of the Workers’ Compensation Act, and the procedure for resolving that dispute is not delineated in the Hearing Rules, the OWCA has the authority to apply the provisions of the Code of Civil Procedure. See Martin v. Red Simpson, Inc., 96-1177, p. 3 (La.App. 3 Cir. 3/12/97), 692 So.2d 635, 637. As the Third Circuit reasoned, if the OWCA were only empowered to modify, but not vacate judgments an aggrieved party would |Rhave no recourse by which to avoid the res judicata effects of the prior judgment. Id., 96-1177, p. 5, 692 So.2d at 638. The Third Circuit in Martin upheld the power of workers’ compensation tribunals to nullify its prior judgments. In doing so, the Third Circuit relied in part upon the Supreme Court case of Williams v. Area Wholesale Tire Co., Inc., 95-2273, p. 2 (La.1/26/96), 666 So.2d 285, 286, wherein the Louisiana Supreme Court remanded a' matter to an appellate court to determine if a OWCA hearing officer should have granted a nullity action. The Martin Court explained that the “supreme court would not remand a case for a determination of whether the hearing officer should have granted a nullity action if the hearing officer was without jurisdiction to grant a nullity action.” Id. Similarly, the Second Circuit has also held that workers’ compensation judges “have the power to annul prior judgments which are based on fraud or misrepresentation,” Brown Radiator & Frame v. Kidd, 44,354, p. 15 (La.App. 2 Cir. 6/24/09), 13 So.3d 1244, 1252.
Relying upon Martin, we find that the OWCA had jurisdiction to consider the petition for annulment because the OWCA has the authority to apply the provisions of the Louisiana Code of Civil Procedure in instances, such as this, where a dispute “arises out” of the Workers’ Compensation Act, but the procedure for resolving said dispute is not delineated in the OWCA Hearing Rules. The correct computation of attorneys’ fees in a case adjudicated before the OWCA, which also rendered judgment on the attorneys’ fees owed, is a matter that “arises out of’ the Workers’ Compensation Act. Thus, we find that this assignment of error is without merit.
The OWCA Erred in Overruling the Joinder Exception
Mr. Babst’s second assignment of error is that Mr. Feingerts’ prior workers’ compensation attorneys should have been joined to the action to annul because Mr. |flFeingerts sought to annul the entire November 8, 2010 judgment, which, awarded fees to those attorneys as well as to Mr. Babst. He maintains that the other attorneys were needed for the just adjudication of the matter under La. Code Civ. Proc. art. 641(2)(1).
*1001 Pursuant to La.Code Civ. Proc. art. 641, a person shall be joined as a party in the action when:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
A party should be deemed indispensable only when his joinder in the litigation is absolutely necessary to protect substantial rights. Terra Development Corp. v. Southland Dragway, 442 So.2d 587 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1225 (La.1984). Additionally, in State Dept. Of Highways v. Lamar Advertising Company of Louisiana, 279 So.2d 671 (La.1973), the Supreme Court considered the resulting consequences of holding that a party is indispensable. The Supreme Court reasoned that “[tjhese differences in the way the absent party affects the case, and the possible harsh result if the party is ruled indispensable, mandate that such classification be applied to a party only after the facts clearly establish that no complete and equitable adjudication of the interest can be made in his absence.” Id. The court stated that “great care must be exercised to insure a proper factual analysis of the party’s interest in the case before a determination of 110the party’s classification is made.” Id. at 675. The Supreme Court concluded that parties should be deemed indispensable only when that result is absolutely necessary to protect substantial rights.
Considering their past representation of Mr. Feingerts, we recognize that his prior workers’ compensation attorneys had a fee interest in the November 8, 2010 judgment rendered by the OWCA. Moreover, Mr. Babst, admittedly and allegedly, only has an approximate 36% interest in the workers’ compensation attorneys’ fees. Nevertheless, under the unique facts of this matter, where the allegations of fraud and ill practices are levied solely against Mr. Babst, who is the sole mover of the motion for approval, we do not find that the other attorneys are indispensable parties to this matter. Pursuant to art. 641(A), complete relief could be provided between Mr. Babst and Mr. Feingerts by having the judgment Mr. Babst confected and acquired through alleged fraud and ill practices annulled. The fee issue could be resolved in either a separate proceeding before the OWCA, or within the annulment action, as the OWCA chose to proceed herein.
Lastly, we note that none of Mr. Fein-gerts’ prior workers’ compensation attorneys contested the modification of the November 8, 2010 judgment or sought to intervene in the nullity action, which ultimately reduced their fees. Based upon the foregoing, we do not find that Mr. Feingerts prior workers’ compensation attorneys needed to be joined in the petition for annulment because their joinder is not absolutely necessary to protect substantial rights. This assignment of error is without merit.
The OWCA Erred in annulling the November 8, 2010 Fee Award
Lastly, Mr. Babst argues that the OWCA erred in annulling the November 8, 2010 judgment for two (2) reasons: 1) Mr. Feingerts failed to demonstrate that he ¿¿was prevented or excused from filing a motion for new trial or an appeal by Mr. *1002 Babst’s alleged fraud or ill-practice; and 2) the fee award of November 8, 2010 was statutorily computed, and therefore, enforcing the award would not be inequitable or unconscionable.
Mr. Babst’s first argument is that Mr. Feingerts waited too long to file a motion for new trial or a motion for a suspensive or devolutive appeal. He further avers that Mr. Feingerts, as an attorney himself, should have been aware of the deadlines to file the aforementioned motions, but inexcusably missed all procedural deadlines to contest the November 8, 2010 judgment. He also argues that Mr. Feingerts even consulted with the attorneys who were representing him in his civil suit, on the issue of the correct calculation of attorneys’ fee in the workers’ compensation matter, but Mr. Feingerts did not act. His alleged negligence in failing to act, argues Mr. Babst, precludes his action to annul.
Additionally, Mr. Babst avers that the attorney-client relationship between he and Mr. Feingerts terminated in October 7, 2010, when the workers’ compensation settlement was approved by the OWCA. Mr. Babst maintains that in his first conversation with Mr. Feingerts, following the filing of the motion for approval, he informed Mr. Feingerts that: he [Mr. Babst] no longer represented Mr. Feingerts; they were adverse to each other on the fee issue, and advised Mr. Feingerts to promptly file an opposition to the motion for fee approval.
Furthermore, Mr. Babst contends that there is no evidence of egregious conduct on his part that was intended to or did deprive Mr. Feingerts of his legal rights. He avers the fee order was not obtained by methods viewed with disdain by the judiciary. There is an absence of collusion and of concealed facts. He alleges that he did not continue to act as Mr. Feingerts’ attorney after November 8, 2010, |12and in no way hindered Mr. Feingerts from seeking post-judgment relief, as evidenced by e-mails exchanged between the parties as well as related testimony.
Mr. Babst’s second argument is that the fee award was statutorily computed and, therefore, there is no inequity or uncon-scionability in enforcing it. Mr. Babst avers that the statutory limit that is set on workers’ compensation attorneys fees is 20% of the amount recovered under La. R.S. 23:1141(B), and that said compensation is based upon compensation that is “payable or awarded” under section 1141(A). Mr. Babst avers that he calculated the attorneys’ fees based upon this Court’s award of $141,276.07, plus $27,000 in interest [or $168,276.07 total], under the unique facts of this case where Mr. Fein-gerts workers’ compensation claim was both adjudicated and affirmed prior to the time Mr. Feingerts’ tort claim was settled.
The purpose of an action for nullity is to prevent injustice which cannot be corrected through new trials and appeals. Gladstone v. American Auto. Ass’n, Inc., 419 So.2d 1219, 1222 (La.1982) [citation omitted]. It is essential that courts review a petition for nullity closely, as an action for nullity based on fraud or ill practices is not intended as a substitute for an appeal or as a second chance to prove a claim that was previously denied for failure of proof. Belle Pass Terminal, Inc. v. Jolin, Inc., 800 So.2d 762 (La.2001). In making its determination, a trial court must view each case according to its own peculiar circumstances. Id.
Furthermore, Louisiana Code Civ. Proc. art. 2004(A) provides that a “final judgment obtained by fraud or ill practices may be annulled.” Trial courts are permitted discretion in deciding when a judgment should be annulled because of fraud *1003 or ill practices, to which discretion reviewing courts will defer. Wright v. Louisiana Power & Light, 06-1181, p. 12 (La.3/9/07), 951 So.2d 1058, 1067 [citations omitted].
The Supreme Court set forth two (2) criteria necessary for establishing an action in nullity under art. 2004: (1) that the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) that the enforcement of the judgment would have been unconscionable and inequitable. Id.
Moreover, the Supreme Court has further held that article 2004 is not limited to cases of actual fraud or intentional wrongdoing:
... the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable.
Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983).
Additionally, a court may look to equity to examine if a litigant was prevented or excused from asserting any claims or defenses. Succession of Blackwell, 713 So.2d 625 (La.App. 3 Cir.1998). “[T]he defendant must bring an action for nullity when the basis of her or his attack on the judgment does not appear in the record and therefore cannot be corrected by appeal.” 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 12.6 (1999).
In the instant matter, the district court was presented with evidence that Mr. Babst was aware that a disagreement existed between himself and his client as to the correct calculation of the workers’ compensation attorneys’ fees prior to his | ufiling of the motion for approval. The record reflects that, from just prior to Mr. Babst filing the motion for approval until Mr. Feingerts filed his petition for annulment, the parties exchanged e-mails reflecting disagreement over attorneys’ fees. The e-mails do not reflect that either party terminated the attorney-client relationship.
The OWCA was also presented with evidence that Mr. Feingerts urged Mr. Babst to rescind the motion for approval, but to no avail. Additionally, the OWCA considered that, based upon e-mails the parties exchanged, Mr. Babst misrepresented to Mr. Feingerts that he [Mr. Babst] would resolve the fee dispute issue by scheduling a conference with Judge Varnado. Mr. Feingerts neither pursued a suspensive nor a devolutive appeal from the judgment at issue because of Mr. Babst’s representations that he was resolving the issue with the OWCA.
The OWCA opined on the record that some of the remedies that Mr. Feingerts would have necessarily been afforded by law were obviated or information was not timely provided to Mr. Feingerts by Mr. Babst. The OWCA reasoned that the prior award was acquired partially via fraud, “but mostly through ill practice.”
In light of the instant facts, we find that the OWCA did not err in holding that both criteria required to annul a judgment were present. First, the circumstances under which the November 8, 2010 judgment was rendered evidence that Mr. Feingerts was deprived of legal rights as a litigant seeking relief. Furthermore, the OWCA’s finding that the enforcement of the judgment would have been unconscionable and inequitable in this instance has merit because Mr. Babst blind-sighted Mr. Fein-gerts with the filing of the motion for *1004 approval when their attorney-client relationship had not been severed. Mr. Fein-gerts was also |ir,unaware that Mr. Babst was going to move for approval of attorneys’ fees based upon a calculation Mr. Babst knew Mr. Feingerts opposed.
Moreover, it would be unconscionable and inequitable to uphold the November 8, 2013 judgment in this instance because even after Mr. Feingerts became aware of the November 8, 2010 judgment, he was dissuaded from pursuing an appeal by Mr. Babst’s representations that the fee dispute would be rectified. The OWCA could have easily determined that Mr. Feingerts was prevented from attacking the fee judgment by Mr. Babst.
Lastly, the petition for annulment was the correct action for Mr. Feingerts to assert because any alleged proof of Mr. Babst’s fraudulent actions would not have been contained in a record on appeal. Mr. Babst has not established that the OWCA erred in exercising its discretion to annul the November 8, 2010 judgment. Thus, we find that this assignment of error is without merit.

DECREE

For the foregoing reasons, the October 25, 2012 judgment of the Office of Workers’ Compensation Administration, is affirmed.
AFFIRMED

. Mr. Babst avers that at the time of this Court's decision interest on the reduced award was approximately $27,000.

. Mr. Babst explains that the insurer paying compensation, such as American, has a first-dollar lien against any recovery made in a related third-party or tort suit. American filed such a lien in Civil District Court. Insurers must approve a tort settlement, if a tort defendant wants to secure the protection of the workers’ compensation statute under La. Rev.Stat. 23:1102(C)(1). The tort defendants sought the protection of the workers’ compensation statute in Mr. Feingerts' case.

.According to Mr. Babst, the $50,000 is currently in his trust account.

. The motion for approval was timely filed, as November 7, 2010, was a Sunday.

. Judge Gwendolyn F. Thompson, of the OWCA, presided over Mr. Feingerts’ workers’ compensation trial; however, she was later re-assigned. As a result, the instant matter was then assigned to Judge Robert Vamado, Jr., who approved the workers’ compensation settlement on October 7, 2010, and signed the order approving the motion for approval of attorneys' fees. The signature lines on Mr. Babst’s motion for approval indicated that he was "Attorney for Employee”.

.In the meantime, in July 2011, Mr. Fein-gerts and the attorneys who represented him in his civil suit mediated their dispute over the amount of attorneys’ fees due in the civil suit. Mr. Babst was not a participant in said mediation.